# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

—o0o—

| | |
|---|---|
| YSIDRO G. ACEVEDO, | 1:05-CV-00166 AWI JMD (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| STATE OF CALIFORNIA, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action has been referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72-302.

PROCEDURAL HISTORY

Petitioner is confined by the State of California, pursuant to a judgment of the Superior Court of California, County of Kern. On September 11, 2001, following a jury trial, Petitioner was convicted of: two counts of possession of a handgun by a convicted felon (Cal. Pen. Code § 12021(a)(1)); two counts of carrying loaded firearms as a convicted felon (§ 12031(a)(2)(A));

1

1  and possession of ammunition by a convicted felon (§ 12316(b)(1)).  Pursuant to California's
2  three-strikes law, the jury found Petitioner had two prior strike convictions (§§ 667(c)-(j) &&
3  1170.12(a)-(e)) and had served two prior prison terms (§ 667.5(b)).  As a result, Petitioner was
4  sentenced to a term of twenty-five years to life plus two years in state prison.

5        On December 31, 2001, Petitioner filed an appeal in the California Court of Appeal, Fifth
6  Appellate District (hereinafter "Fifth DCA").

7        On February 21, 2002, Petitioner filed a Petition for Writ of Habeas Corpus with the Kern
8  County Superior Court.  The petition was denied March 6, 2002.

9        On July 29, 2002, the Fifth DCA issued its ruling on Petitioner's appeal.  The Fifth DCA
10  stayed the judgment for count five (possession of ammunition), and upheld the judgment of the
11  Superior Court in all other respects.  On August 6, 2002, the Kern County Superior Court
12  modified Petitioner's sentence to reflect the stay in judgment of count five.

13        On August 29, 2002, Petitioner filed a Petition for Review in the California Supreme
14  Court.  The petition was summarily denied on October 2, 2002.

15        On July 29, 2003, Petitioner filed a Petition For Writ Of Habeas Corpus in the Kern
16  County Superior Court.  The petition was denied on August 26, 2003.

17        On November 18, 2003, Petitioner filed a Petition For Writ Of Habeas Corpus in the Fifth
18  DCA.  The petition was denied on December 4, 2003.

19        On December 22, 2003, Petitioner filed a Petition For Writ Of Habeas Corpus with the
20  California Supreme Court.  The petition was denied on December 15, 2004.

21        On February 7, 2005, Petitioner filed the instant Petition.  On May 12, 2005, this Court
22  ordered Petitioner to amend his Petition.  Petitioner's Amended Petition was filed on June 6,
23  2005.

24        Respondent filed its Answer to the Petition on March 22, 2006, and Petitioner filed a
25  Traverse on April 20, 2006.
26  ///
27  ///
28  ///

# FACTUAL BACKGROUND

On April 5, 2001, at approximately 10:26 p.m., Kern County Deputy Sheriff Todd Bishop was on patrol near the intersection of Delfino and Belle Terrance Streets. As he approached the intersection, he observed appellant walking unsteadily in the roadway. Appellant's gait was very unsteady as he walked in and out of the center of Delfino Street. Deputy Bishop believed appellant was under the influence of alcohol, and parked his patrol car a few yards ahead of appellant's position. Deputy Bishop stepped out of the patrol car and waited for appellant to walk by, and noticed a second man was also walking with appellant.

When the two men approached the patrol car, Deputy Bishop asked if he could speak with them. The second man immediately stopped at the patrol car, but appellant continued to walk. Appellant kept his head down and looked at a cell phone in his hand, and walked away from the patrol car. Appellant glanced up and looked at Deputy Bishop, then ran northbound on Delfino Street.

Deputy Bishop left the second man standing by the patrol car, ran after appellant, and called for backup assistance. Bishop repeatedly identified himself and ordered appellant to stop, but appellant continued to urn past residences on Delfino street. Appellant ran into a driveway and tried to jump a chain link fence that was six to seven feet high. Appellant partially climbed the fence, and Deputy Bishop saw an object fly out of his hands. Appellant lost his grip on the fence and fell down into the driveway. He turned around and faced Bishop, who was right behind him. Bishop drew his baton and ordered appellant to the ground, but appellant jumped to his left, ran between two parked cars to avoid Bishop, and then ran away.

Deputy Bishop continued to pursue appellant and eventually caught up to him. Appellant turned and realized Bishop was about to reach him, and he suddenly stopped running. Bishop drew his handgun and ordered appellant to the ground. Appellant complied and laid on his stomach. Bishop held appellant at gunpoint until backup units arrived, then placed him in handcuffs as he remained on the ground.

Deputy Bishop rolled appellant onto his right side and conducted a patdown search. Appellant was wearing a long jacket. Bishop found an empty brown leather holster on appellant's waistband, near his belt buckle, which had been covered by the jacket. Bishop asked appellant where the gun was. Appellant replied it was on his leg. Bishop then found a silver Raven Arms MP .25-caliber semi-automatic handgun in an ankle holster on appellant's right ankle. The weapon was loaded and operable. The magazine contained six rounds of full metal jacket .25-caliber ammunition, but there was no round in the chamber.

Deputy Bishop compared the .25-caliber handgun with the empty holster on appellant's waist, and realized the gun could not fit into the holster. Bishop retraced the pursuit route, and examined the area near the chain link fence that appellant tried to jump. On the other side of the fence, Bishop found a cell phone and a Lorcin .380-caliber semi-automatic handgun. The .380-caliber handgun was operable and the magazine was fully loaded with seven .380-caliber hollow point rounds, but there was no round in the chamber. Bishop determined the .380-caliber handgun fit into the holster on appellant's waist.

Deputy Bishop further determined appellant was under the influence of alcohol because his speech was slurred, his eyes were bloodshot, and his breath had the odor of alcohol. The second man who was walking with appellant disappeared from the area and was never found.

Deputy Bishop placed appellant in his patrol car and transported him to jail. During the trip, appellant asked what he was being arrested for. Bishop replied that he wasn't sure, but he would probably be charged with being a felon in possession of a loaded firearm. Appellant asked "how many felonies that was."

Bishop again said that he wasn't sure and could give him a better idea once they arrived at the jail. Appellant then asked if he was going to be charged with a felony for having both guns. Bishop replied that each gun carried a separate felony count. Bishop testified appellant hung his head down and said: "I fucked up, man, just plain fucked up–out fucking drinking, getting stupid."

When they arrived at the jail, Bishop advised appellant of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, and appellant said he didn't want to talk to Bishop. However, appellant asked Bishop if he was the officer who chased him. Bishop replied that he was, and appellant "was very apologetic. He said he wanted to apologize for the whole thing, said he was out drinking and being stupid."

Appellant was convicted of all charged offenses and sentenced to the third strike term of 25 years to life.

## DISCUSSION

### I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d). Accordingly the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied*, 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after its enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### II. Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the AEDPA. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, a petition for habeas corpus will not be granted unless the adjudication in question "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, quoting 28 U.S.C. § 2254(d)(1). In ascertaining "clearly established Federal law," the Court looks to the "holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the relevant state-court decision." Id., quoting Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, quoting 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

This Court may not issue the writ simply because in its independent judgment the state court decision applied clearly established federal law erroneously or incorrectly; for a writ to issue, 'that application must also be unreasonable." Id. at 411. A federal habeas court making

5

1 the "unreasonable application" inquiry should ask whether the state court's application of clearly
2 established federal law was 'objectively unreasonable." Id. at 409.

3    Petitioner has the burden of establishing that the decision of the state court is contrary to
4 or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
5 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the
6 states, ninth circuit precedent remains relevant persuasive authority in determining whether a
7 state court decision is objectively unreasonable. See Duhaime v. DuCharme, 200 F.3d 597, 600-
8 01 (9th cir. 1999).

9    AEDPA requires that this court give considerable deference to state court decisions. The
10 state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Moreover, we are
11 bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.
12 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

13 **III.  Review of Petitioner's Claims**

14     **A.    Claim One: Error in Jury Instructions**

15         1.    Factual Background

16    In count five, Petitioner was charged with being a felon in possession of ammunition for
17 .25- and .38-caliber handguns, in violation of section 12316, subdivision (b)(1). The statute
18 states:

19 > "No person prohibited from owning or possessing a firearm under section 12021
> or 12021.1 of this code or Section 8100 or 8103 of the Welfare and Institutions
20 > Code shall own, possess, or have under his or her custody or control, any
> ammunition or reloaded ammunition." (Cal. Pen. Code § 12316, subd. (b)(1)).
21

22    At the conclusion of the argument, the trial court read "SPECIAL INSTRUCTION #2" to
23 the jury to define the elements of count five. The printed instruction correctly used the word
24 "ammunition" throughout. However, the court read the following version of the instruction:

25 > "[Petitioner] is accused in count five of having violated section 12316(b)(1) of the
> Penal Code, a crime.
26
> "Every person who, having previously been convicted of a felony, who owns,
27 > possesses, or has under his control or custody any *ammunition* is guilty of
> violating Section ... 12316(b)(1) of the Penal Code, a crime.
28

> "In this case the previous felony conviction has already been established by stipulation so that no further proof of that fact is required. You must accept as true the existence of this previous felony conviction.
>
> "Again, there are two kinds of possession: Actual possession and constructive possession.
>
> "Actual possession requires that a person knowingly exercise direct physical control over a thing.
>
> "Constructive possession does not require actual possession but does require that a person knowingly exercise control over or the right to control a thing, either directly or through another person or persons.
>
> "One person may have possession alone or two or more persons together may share actual or constructive possession.
>
> "In order to prove this crime, each of the following elements must be proved:
> "One, [Petitioner] had in his possession or had under his control a *firearm*, and; two [Petitioner] had knowledge of the presence of the *firearm*." (Italics added)

Petitioner alleges the incorrect use of the term "firearm" in the final paragraph of SPECIAL INSTRUCTION #2 resulted in a conviction on count five in violation of his due process rights. (Pet. at 5).

    2.    Clearly Settled Supreme Court Law

Federal Habeas Corpus relief does not lie for instructional errors under state law. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). Rather, to obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Id. Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. See, United States v. Frady, 456 U.S. 152, 169 (1982), *citing* Henderson v. Kibbe, 431 U.S. 145, 154 (1977). Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (whether the error had a substantial and injurious effect or influence in determining the jury's verdict.); see also Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).

1              3.     State Court Review

2       Petitioner's claim was first presented on appeal to the Fifth DCA, which rejected the

3  claim in a reasoned opinion.  The Fifth DCA found that, viewed in light of the jury instructions

4  in their entirety and the entire trial process, the trial court's error in the instruction on count five

5  did not constitute in a due process violation, as the entirety of the record "reflects the jury's

6  unmistakable intent to convict [Petitioner] of count V, possession fo ammunition by a felon."

7  Fifth DCA Op. at 9.

8       First, looking beyond the challenged instruction itself, the Fifth DCA noted the

9  information read to the jury on the first day of trial alleged in count five that Petitioner possessed

10 ammunition in violation of the Penal Code.  The trial evidence established that Petitioner

11 possessed both .25- and .38-caliber handguns, both of which were loaded.  The prosecutor

12 defined the evidence applicable to each count, and specified that count five was based on

13 Petitioner's possession of the ammunition inside the guns.

14      As for the challenged instruction itself, the Fifth DCA noted that the trial court correctly

15 read the introductory paragraphs of the instruction, which informed the jury that count five was

16 based on Petitioner's possession of ammunition.  The instruction correctly defined actual and

17 constructive possession, which were relevant issues given Petitioner's attempt to discard the

18 loaded .38-caliber handgun during the pursuit.

19      Overall, the Fifth DCA found the trial court's misstatement of a single word could not be

20 relied upon to nullify the verdict in count five.  No objections were made at trial to the

21 misstatement, even though the court invited the parties to lodge final objections after reading the

22 instructions.  And the trial court's erroneous statement was "'so obvious' that there is no

23 reasonable likelihood the jury, 'with its members deliberating the charges, would have

24 understood' that possession of ammunition is defined as possession of a firearm. (Citation)"

25 Fifth DCA Op. at 11.  Moreover, the jury's verdict on counts one through four reflects its finding

26 that Petitioner was in possession of both handguns.  Given the uncontroverted evidence that both

27 guns were loaded at the time, there is no reasonable probability the outcome on count five would

28 have been different had the court correctly used the term "ammunition" rather than "firearm" in

the last sentence of the challenged instruction.

### 4. Analysis of Petitioner's Claim

We conclude the Fifth DCA correctly applied the applicable legal standard in reviewing Petitioner's claim. The Fifth DCA examined not only the challenged instruction, but the instructions as a whole, and the entire trial process, and determined that the challenged instruction did not violate due process or prejudice Petitioner's defense. At the outset of the trial, the information read to the jury alleged in count five that Petitioner was a felon in possession of ammunition. At trial, Deputy Bishop testified that both the .25- and .38-caliber weapons were fully loaded with ammunition. The defense did not present any evidence to the contrary, and merely cross-examined Deputy Bishop as to Petitioner's possession of the guns. During closing argument, the prosecutor specifically defined count five as possession of ammunition by an ex-felon, based on the bullets loaded into the .38- and .25-caliber guns.

With respect to the challenged instruction itself, while it is clear the trial court incorrectly used the term "firearm" in the last paragraph of the instruction relating to possession of ammunition, elsewhere in the instruction the court used the correct term, and the court correctly defined possession, the only element of the crime in dispute.

Finally, We agree that the jury's finding of guilt on counts one through four reflects its determination that Petitioner was in possession of both the .25- and .38-caliber handguns. As the evidence established the weapons were loaded, it is clear the jury intended in count five to convict Petitioner of possession of the ammunition.

We find nothing in the record to support Petitioner's claim that use of the correct term in the last paragraph of the trial court's instruction on count five would have resulted in a different outcome. Accordingly, Petitioner's claim should be denied.

### B. Claim Two: Ineffective Assistance of Counsel

In his second claim, Petitioner asserts he was denied the opportunity to fully litigate his Fourth Amendment claim due to the ineffective assistance of trial counsel, in violation of his Sixth Amendment rights. Pet. at 5.

Specifically, Petitioner claims ineffective assistance due to his trial counsel's failure to

challenge the arresting officer's reason for stopping Petitioner – the officer's belief that Petitioner was intoxicated. Petitioner claims his first counsel ratified the police report rather than challenging the stop or investigating why the officer did not conduct a urine or blood analysis. Petitioner further claims his second counsel permitted crucial evidence to reach the jury during voir dire and failed either to adequately cross-examine the arresting officer on his reasons for stopping Petitioner or to present any evidence after the Prosecution's case.

        1.     State Court Review

Petitioner first presented this claim before the Kern County Superior Court in a Petition for Writ of Habeas Corpus on July 29, 2003. The Petition was denied on August 206, 2003. Petitioner subsequently filed Writs of Habeas Corpus in the Fifth DCA and California Supreme Court, both of which summarily denied the petitions.

Citing Strickland v. Washington, 466 U.S. 668, 697 (1984), the Kern County Superior Court found Petitioner had failed to make a prima facie case for relief. Specifically, it found Petitioner "did not meet his burden of showing prejudice (that there was a reasonable possibility that the results of the case would have been more favorable to him if his counsel's representation had not been deficient.)." Sup. Ct. Habeas Op. at 2. The court found Petitioner failed to assert facts and evidence as to what specific arguments trial counsel should have raised, that the Prosecution would not have challenged the arguments, that any Prosecution challenge would have been unsuccessful, that the court would have granted any motion based on the fourth amendment argument and/or that Petitioner would have received a better result at trial.

The Superior Court found that the stop and arrest were supported by probable cause. With regard to the initial stop, the court found sufficient evidence for the Deputy to effectuate a stop. Deputy Bishop testified that he stopped Petitioner based on his observation of Petitioner's unsteady gait. The stop was reasonable under Terry v. Ohio, 392 U.S. 1 (1968), as the deputy observed possible criminal activity. The court noted the deputy need only have an objective manifestation of possible criminal activity in order to effectuate a stop. With regard to the arrest, the court found probable cause to arrest Petitioner for public intoxication in that Petitioner admitted to the deputy that he had been out drinking, his breath smelled of alcohol, his speech

was slurred and his eyes were bloodshot. Probable cause to arrest petitioner for possession of firearms was based not on the stop, but on Petitioner's flight from the deputy, his attempts to discard an object later determined to be a handgun, and the subsequent detention and frisk which revealed a second handgun on his person.

Because both stop and arrest were supported by probable cause, and any challenge thereto would have been denied, Petitioner could not demonstrate trial counsel's failure to challenge the stop and arrest amounted to ineffective assistance of counsel.

### 2. Clearly Settled Supreme Court Law

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the Petitioner must demonstrate counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The Petitioner must show counsel's representation fell below and objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgement considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, the Petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result...would have been different." 466 U.S. at 694. Petitioner must show counsel's errors were so egregious as to deprive Petitioner of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id;

Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any deficiency not resulting in prejudice must necessarily fail. However, there are certain instances that are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. See Strickland, 466 U.S. at 692; United States v. Cronic, 466 U.S. at 659, n. 25 (1984).

Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

### 3    Analysis of Petitioner's Claim

We find the state court correctly articulated and reasonably applied the standard in Strickland v. Washington, 466 U.S. 668 (1984). The state court found Deputy Bishop's initial stop of Petitioner on suspicion of being intoxicated in public was justified under Terry v. Ohio based on the deputy's observations of Petitioner, and that the subsequent arrest for intoxication and possession of a firearm were supported by probable cause. Any challenge based on the legality of the stop and arrest would have been without merit. As such, the failure of Petitioner's trial counsel to object thereto does not constitute ineffective assistance. See United States v. Quintero-Barraza, 57 F.3d 836, 841 (9th Cir. 1995) (failure to raise a meritless objection is not ineffective assistance); James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994) (same); Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005) (same)..

Accordingly, Petitioner's claim should be denied.

**C.    Claim Three: Insufficient Evidence**

In his third claim for relief, Petitioner asserts the evidence was insufficient to support Deputy Bishop's initial stop on suspicion that Petitioner was intoxicated in public. Specifically, Petitioner claims "the state's use of insufficient evidence (hearsay) to justify probable cause of

intoxication, compound[ed] with [the] ineffective assistance of counsel, resulted in a violation of petitioner's 4th, 6th, 8th and 14th Amendment [rights]." Pet. at 6.

### 1. State Court Review

Petitioner first presented this claim to the Kern County Superior Court in a Petition for Writ of Habeas Corpus. The Superior Court denied the petition in a reasoned opinion. As noted above, the Kern County court found the evidence sufficient to justify Deputy Bishop's stop. Deputy Bishop testified that he stopped Petitioner on suspicion of public intoxication after observing Petitioner walking unsteadily down the street. The court found this a reasonable Terry stop, as the deputy's observation was of an objective manifestation of possible criminal activity. With respect to his arrest for public intoxication, the court found probable cause was established by Petitioner's admission to the Deputy that he had been out drinking (an exception to the hearsay rule under California law), the smell of alcohol emanating from Petitioner, Petitioner's slurred speech and his bloodshot eyes.

### 2. Clearly Settled Supreme Court Law

In reviewing sufficiency of evidence claims, California courts expressly follow the Jackson standard enunciated in Jackson v. Virginia, 443 U.S. 307 (1979). See People v. Johnson, 26 Cal.3d 557, 575-578 (1980); see also People v. Thomas, 2 Cal.4th 489, 513 (1992). Pursuant to the Supreme Court's holding in Jackson, the test in determining whether a factual finding is fairly supported by the record is as follows:

> "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).

This Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986). This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts. Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.1990). Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to

the presumption. Sumner v. Mata, 455 U.S. 539, 597 (1981).

        3.      Analysis of Petitioner's Claim

Petitioner's claim is without merit. Viewing the facts in the light most favorable to the prosecution, there was sufficient evidence of intoxication for Deputy Bishop to effectuate a Terry stop, and sufficient evidence supporting Petitioner's subsequent arrest for public intoxication. Petitioner argues the evidence of intoxication was based on impermissible hearsay. However, under California law a party's out of court admission is admissible. (Cal. Evid. Code § 1221). We find the state court correctly applied the Jackson standard; accordingly Petitioner's claim should be denied.

    **D.    Claim Four: Ineffective Assistance of Counsel**

In his fourth claim for relief, Petitioner asserts his trial counsel was ineffective for failing to object to the testimony of Deputy Bishop that Petitioner admitted to being intoxicated. (Pet. at 6, 6(A)). This evidence was admitted at Petitioner's preliminary hearing for the purpose of determining if Deputy Bishop had probable cause to arrest Petitioner for public intoxication.

        1.      State Court Review

Petitioner first presented this claim to the Kern County Superior Court in a petition for writ of habeas corpus. The state court rejected the claim, stating:

> As to the ineffective assistance of the 2nd Counsel on grounds other than the 4th Amendment challenge[, it] is based on conduct all of which is on the record – allowing evidence of Petitioner's alleged unconfirmed intoxication in through voir dire and inferring that he was going to challenge the Deputy's observation of [Petitioner], but failing to do so. ... Petitioner has failed to show that had his second counsel acted differently that Petitioner would have received a better result at trial. Therefore, Petitioner has failed to prove as a demonstrable reality that he suffered any prejudice as a result of any of counsel's actions and his claim that he received ineffective assistance of counsel is an unsupported, conclusory allegation that is insufficient to support the relief requested. In re Swain, 34 Cal.2d 300, 303-304 (1949); People v. Karis, 46 Cal.3d 612, 656 (1988).

        2.      Clearly Settled Supreme Court Law

The standard for reviewing ineffective assistance of counsel claims is articulated *supra*, Section III(B)(2).

        3.      Review of Petitioner's Claim

The determination of the state court is not contrary to, nor an unreasonable application of

relevant precedent. As noted above, Deputy Bishop's stop of Petitioner based on his suspicion that Petitioner was intoxicated in public was justified under <u>Terry v. Ohio</u> by his observations of Petitioner's unsteady gait. Moreover, Deputy Bishop's testimony regarding Petitioner's out of court admissions of drunkenness were entirely admissible under California law. We agree with the state court that Petitioner has failed to articulate either how trial counsel's performance was deficient, or how Petitioner would have received a better result at trial but for the alleged deficiencies in counsel's performance. Accordingly, Petitioner's claim should be denied.

   **E.**  **Claim Five: Error in Finding Petitioner's Prior Conviction a Serious Felony**

    1.  Factual Background

In 1987 Petitioner entered into a plea agreement under which he was convicted for shooting at an inhabited dwelling (Pen. Code § 246). In his fifth claim, Petitioner asserts the trial court erred by not submitting to the jury the question of whether Petitioner's 1987 conviction was a serious felony. He further argues that, even if it were a proper matter for judicial determination, the judge was still obligated to make findings of fact on that issue. Pet. at 6A-B.

    2.  State Court Review

Petitioner's claim was first presented to the Kern County Superior Court in a petition for writ of habeas corpus. The Kern County court did not reach the merits of the claim, instead noting "[m]atters which could have been, but were not, raised on appeal are not cognizeable on habeas corpus. <u>In re Dixon</u>, 41 Cal.2d 756, 759 (1953)." (Superior Ct. Habeas Op. at 3). Petitioner subsequently presented the claim to the California Supreme Court in a petition for writ of habeas corpus. That court denied the claim without citation or comment on December 15, 2004.

    3.  Clearly Settled Supreme Court Law

The Constitution proscribes any deprivation of liberty without "due process of law," and guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Constitution, Amdt. 14, 6. In keeping with this, a criminal defendant has a right to a jury determination as to every element of the crime with which he or she is charged, beyond a reasonable doubt. <u>U.S. v. Gaudin</u>, 515 U.S. 506, 510 (1995). In

Apprendi v. New Jersey, the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490.

### 3. Review of Petitioner's Claim

Petitioner's claim is without merit. In Almendarez-Torrez v. United States, 523 U.S. 224, 243-247 (1998), the Supreme Court held that a prior conviction used as a sentencing enhancement is not subject to the requirement that a jury find it true beyond a reasonable doubt. Moreover, Petitioner's argument that the judge was required to make findings of fact construing his prior conviction as a serious felony for three-strikes purposes fails to state a claim. In determining whether the 1987 conviction qualified as a serious felony under the Three Strikes law, the trial court engaged in statutory interpretation, not judicial factfinding, and "[s]uch analysis raises no Sixth Amendment issue." James v. United States, __ U.S. __, 127 S.Ct. 1586, 1600 (2007). Accordingly, Petitioner's claim should be denied.

### F. Claim Six: Ineffective Assistance of Appellate Counsel

In his final claim for relief, Petitioner asserts his appellate counsel rendered ineffective assistance in that appellate counsel "refused to raise a claim of ineffective assistance of trial counsel...after petitioner requested that she do so." He further claims appellate counsel "failed to raise[] claims 2, 3, 4, and 5 in petitioner's opening brief also after petitioner requested that she do so." Pet. at 6B.

### 1. State Court Review

Petitioner's claim was presented to the California Supreme Court in a petition for writ of habeas corpus. The state court denied the claim without citation or comment.

### 2. Clearly Settled Supreme Court Law

The Strickland standard for reviewing ineffective assistance of counsel claims applies to appellate counsel as well as trial counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000). This standard is set forth above. See section III(B)(2), *supra*.

### 3. Analysis of Petitioner's Claim

To the extent Petitioner claims ineffective assistance simply due to appellate counsel's

1  failure to raise issues he desired to have raised, his claim is without merit.  The constitution does
2  not require appellate counsel to raise every nonfrivolous issue requested by appellant.  Jones v.
3  Barnes, 463 U.S. 745, 751-754 (1983); Miller v. Keeney, 882 F.2d at 1434, n. 10.  Indeed, one of
4  the hallmarks of effective appellate advocacy is the weeding out of weaker issues.  Miller, 883
5  F.2d at 1434.

6       Moreover, Petitioner fails to demonstrate the requisite prejudice necessary to support a
7  finding of ineffective assistance.  As discussed above, the claims Petitioner asserts should have
8  been raised by appellate counsel are all without merit.  Ineffective assistance of counsel cannot
9  be predicated on counsel's failure to raise meritless claims.  See United States v. Quintero-
10 Barraza, 57 F.3d 836, 841 (9th Cir. 1995) (failure to raise a meritless objection is not ineffective
11 assistance); James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994) (same); Juan H. v. Allen, 408 F.3d
12 1262, 1273 (9th Cir. 2005) (same).  Accordingly, Petitioner's claim should be denied.

13 **RECOMMENDATION**

14      The Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be
15 DENIED and the Clerk of the Court be DIRECTED to enter judgment.

16      These Findings and Recommendations are submitted to the Honorable Anthony W. Ishii,
17 United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B)
18 and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern
19 District of California.

20      Within thirty (30) days after being served with a copy, any party may file written
21 objections with the court and serve a copy on all parties.  Such a document should be captioned
22 "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections
23 shall be served and filed within ten (10) court days (plus three days if served by mail) after
24 service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to
25 28 U.S.C. § 636 (b)(1)(c).  The parties are advised that failure to file objections within the
26 specified time may waive the right to appeal the District Court's order.  Martinez v. Y1st, 951
27 F.2d 1153 (9th Cir. 1991).

28 ///

IT IS SO ORDERED.

**Dated:     February 14, 2008**                              /s/ John M. Dixon
                                                              UNITED STATES MAGISTRATE JUDGE